FILED

MARK HEZINGER
(Address and contact information redacted)
In Pro Per  4319 Price St #4
Los Angeles, CA 90027

2018 JUN -4  PM 3: 55

CLERK U.S. DISTRICT COURT
CENTRAL DIST. OF CALIF.
LOS ANGELES

BY:_____

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

LACV18  04969 -CBM -JEMx

| | |
|---|---|
| Mark Hezinger | ) COMPLAINT FOR INJUNCTIVE RELIEF AND |
|      Plaintiff, | ) DAMAGES |
| | ) |
|   vs. | ) |
| | ) |
| United States Attorney's Office for the Central | ) |
| District of California | ) |
| National Security Division, Department of Justice | ) |
| Federal Bureau of Investigation | ) |
| Department of Homeland Security | ) |
| Los Angeles Police Department | ) |
|     Defendants | ) |

PAID

JUN - 4 2018

Clerk, US District Court
COURT 4612

Dated this 4th day of June, 2018

ORIGINAL

## COMPLAINT FOR INJUNCTIVE RELIEF and DAMAGES

This is an action under the Freedom of Information Act/Privacy Act, 5 U.S.C. § 552a, and the California Public Records Act, to order the production of agency records concerning the plaintiff, Mark Hezinger, which defendants above have improperly withheld from plaintiff.

*i 2.* Jurisdiction and Venue. This court has jurisdiction over this action for all defendants except the Los Angeles Police Department (LAPD) pursuant to 5 U.S.C. § 552(a)(4)(B) and the residency of the plaintiff. For defendant LAPD, this court has jurisdiction and venue under the California Public Records Act (true, yes?).

*i 3.* Plaintiff. Plaintiff, Mark Hezinger, is a resident of Los Angeles, California, an American citizen, and is the requester of the records which the defendants are now withholding. Identifying documents for the plaintiff redacted.

*i 4.* Plaintiff has requested this information for injunctive, declaratory and monetary relief from massive civil rights violations from law enforcement misconduct resulting from what the plaintiff suspects is extreme carelessness in the enactment of watch lists and subsequent and ongoing excessive law enforcement behavior directed towards himself.

*i 5.* Prompt and expedited release of the information withheld by the defendants is essential to halting this behavior that is target and good cause will be detailed below in the immediacy section.

*i 6.* Defendants. Defendant United States Attorney's Office of the Central District of California (subsequently USALA), which includes a branch of the Department of Justice National Security Division within it, is

an agency of the United States and has possession of records that plaintiff seeks.

*i 7.* Defendant National Security Division, Department of Justice (subsequently NSD), is an agency of the United States and has possession of records that plaintiff seeks.

*i 8.* The Federal Bureau of Investigation (FBI) is a federal agency and has records the plaintiff seeks.

*i 9.* The Department of Homeland Security (DHS) is a federal agency and has possession of records that the plaintiff seeks.

*i 10.* The Los Angeles Police Department (LAPD) is a local agency and has records the plaintiff seeks.

*i 11.* Other federal agencies which have played a part in the plaintiff's FOIA/PA requests are the Department of Justice Executive Office of United States Attorneys (subsequently EOUSA), which handles FOIA requests for US Attorneys nationwide, and the DOJ Office of Information Policy (subsequently OIP), which adjudicates appeals.

*i 12.* Plaintiff has submitted multiple FOIA/PA requests to the federal agency defendants which have advanced through the appeal process, and has sent an ignored California Public Records Act request to defendant LAPD, and will therefore divide this complaint into multiple claims.

*i 13.* Claim 1 will cover request EOUSA-2018-000876 directed toward defendant USALA.

*i.14* Claim 2 will cover the DOJ-AP-2018-000110 OIP remand decision (from FOIA/PA request EOUSA-2017-002544) directed towards defendant USALA.

*i 15.* Claim 3 will ask the court to reverse the FOIA/PA appeal decision DOJ-AP-2017-4572 (from request EOUSA-2017-001272) directed towards defendants USALA and NSD.

*i 16.* Claim 4 will ask the court to reverse the appeal decision DOJ-AP-2017-003648 (from FOIA/PA request 17-091) directed towards defendant NSD.

*i 17.* Claim 5 will ask the court to reverse the appeals of 8 FOIA/PA requests directed towards defendant FBI.

*i 18.* Claim 6 will ask the court to reverse appeal decision 2017-HQAP-00272 (from FOIA/PA request 2017-NPFO-00531)  and cover all related FOIA/PA requests directed toward defendant Department of Homeland Security (DHS).

*i 19.* Claim 7 will cover an ignored California Public Records Act request directed towards defendant LAPD.

*i. 20.* Claim 8 will provide context and immediacy to the plaintiff's complaint.

*i. 21.* The complaint will conclude with final requests for the court.

-----------------------------------------------------------------------------------------------

------------------

Claim 1. EOUSA-2018-000876. Plaintiff argues for immediate release of records from defendant USALA due to no response from USALA to his FOIA/PA request of November 24, 2017.

1.2. On November 24, 2017, by using the https:// foiaonline.regulations.gov website, (subsequently FOIAonline), plaintiff followed an authorized FOIA/PA request process and requested from defendant USALA records about himself.

1.3. On February 1, 2018, an acknowledgement letter with tracking number EOUSA-2018-000876 was sent to the plaintiff from the Executive Office of United States Attorneys (EOUSA), which handles FOIA requests for USALA.  Plaintiff points out that the response itself was not issued within 20 days as required by 5 U.S.C. § 552a.

1.4. Nothing further has happened. The plaintiff asks the court to require defendant USALA to honor the request in full.

------------------------------------------------------------------------------------------------------

Claim 2. Claim 2 will demonstrate that defendant USALA has not responded to a remand decision issued by the Department of Justice Office of Information Policy (OIP) under appeal tracking number DOJ-AP-2018-000110 (from EOUSA-2017-002544) , and therefore the court should decide to order defendant USALA to immediately release all records queried by the plaintiff under FOIA/PA request EOUSA-2017-002544. A timeline follows.

2.2. On August 8, 2017, by using the FOIAonline website, plaintiff followed an authorized FOIA/PA request process and requested from defendant USALA, through the Executive Office of United States Attorneys (EOUSA), access to specific records generated about himself by the defendant USALA. This request was assigned tracking number EOUSA-2017-002544 (subsequently -002544).

2.3. Plaintiff attached additional documents within FOIAonline as evidence to support the text of -002544, including his first FOIA/PA request (a request not covered under -0002544, and therefore not directly litigated

in this claim 2, but rather in the following claim 3), also a photo of himself hand delivering this first request to the 12th floor window of the defendant USALA (why didn't he smile!), and lastly a document to attempt to inject a bit of whimsy in his life that is being severely abused by overzealous law enforcement. It is important to note that the purpose of including the previous request and the photo evidence of its delivery as supporting documents of -002544 was not to litigate the content of that previous request within -002544 but rather to provide evidence of the likelihood that USALA did create records that should be released to the plaintiff under request -002544.

2.4. By letter dated September 20, 2017, plaintiff was denied access to the requested information by EOUSA on the grounds that it was a duplicate to other earlier FOIA/PA requests made by the plaintiff.

2.5. On October 4, 2017, the plaintiff appealed through FOIAonline. An email response assigned this appeal tracking number EOUSA-2018-000009.

2.6. Oddly, multiple tracking numbers have been assigned to this appeal.

2.7. On October 10, 2017, The Office of Information Policy (OIP) acknowledged the appeal and assigned tracking number DOJ-AP-2018-000110 (from -002544).

2.8. Most mysteriously, since to his knowledge plaintiff has never received communication about it, an additional tracking number, EOUSA-2018-000116 (-000116) was created within FOIAonline about this same appeal. Screenshots are available which include 2 blank emails attached within -000116 referring to the OIP -000110 tracking number.

2.9. On November 22, 2017, a full remand by OIP was issued under tracking number DOJ-AP-2018-000110.

2.10. Irregularities abound in the handling of the plaintiff's appeal of -002544 by EOUSA and OIP. Appeal tracking number -000009 is not searchable in FOIAonline and is presumed by the plaintiff to be a discarded appeal tracking number that was created when plaintiff used FOIAonline to appeal -002544. The only evidence of this tracking number is a -000009 acknowledgement email.

2.11. Appeal number -000110 as it exists within FOIAonline is devoid of attachments or documentation. That means the documents electronically sent to plaintiff with the -000110 tracking number are missing from FOIAonline. The plaintiff sincerely hopes that was not done on purpose. Screenshots available.

2.12. There has been no response from USALA, or EOUSA on behalf of USALA from the DOJ-AP-2018-000110 OIP remand decision issued November 22, 2017.

2.13. Conclusion of claim 2 discussing appeal DOJ-AP-2018-000110 (from FOIA/PA request -002544).

2.14. Defendant USALA has not responded in any way to the November 22, 2017 Office of Information Policy remand decision issued under tracking number DOJ-AP-2018-000110, and therefore the court should order that USALA release all records to the plaintiff covered under request EOUSA-2017-002544.

2.15. Also, based on the description of the rat's nest of tracking numbers above, if EOUSA-2017-000116 is considered the active tracking number that organizes a response to the -000110 remand decision,

defendant USALA (through EOUSA acting on behalf of USALA) has taken no action and has neither released records the plaintiff seeks in response to the November 22, 2017 OIP remand decision or communicated any rationale to deny the release of records the plaintiff seeks.

2.16. Therefore the plaintiff asks the court to decide that USALA release all records queried by EOUSA-2017-002544 to the plaintiff as required by 5 U.S.C. § 552a.

-----------------------------------------------------------------------------------------------

Claim 3. Appeal DOJ-AP-2017-4572. Plaintiff requests injunctive relief and the production of records from defendants USALA and NSD for his original FOIA/PA request for self specific records.

3.1. This request, hand delivered to defendants USALA and NSD on December 19, 2016, was completely ignored, and plaintiff asks the court to consider summarily ruling in favor of the plaintiff and order the defendants to release all documents concerning himself.

3.2. This FOIA/PA request from the plaintiff hand delivered to the defendants USALA and NSD for records has been merged into appeal tracking number DOJ-AP-2017-4572 (from EOUSA-2017-001272). Several other tracking numbers all concerned with the plaintiff using FOIA/PA to query the defendant USALA/NSD for self-specific records exist and have been merged into the appeal -004572(from -001272).  These tracking numbers include MRU-FOIA58-87, EOUSA-2017-000279, EOUSA-2017-000500, EOUSA-2017-000501, FOIA-2017-000900, appeal DOJ-AP-2017-003392, and resulting EOUSA-2017-001272. Eventually

appeal DOJ-AP-2107-4572(from -001272) was adjudicated by OIP on June 15, 2017, and given a disposition of affirmed on appeal.

3.3. A timeline follows:

3.4. On December 19, 2016, plaintiff hand delivered a FOIA/PA request to defendant USALA/NSD at its front facing 12th floor window on 312 Spring St, Los Angeles, CA 90012. (It's important to note for both this current claim 3 and also the following claim 4 of this complaint that the 15th floor NSD section was listed on this request.)

3.5. On February 1, 2017, the plaintiff, via certified mail, mailed a duplicate of his hand delivered request to defendants USALA and NSD. To the plaintiff's best ability to discern, this request was also apparently ignored by the defendants.

3.6. On March 3, 2017, the plaintiff submitted a FOIA/PA request for self-specific records through askDOJ@usdoj.gov.

3.7. On March 6, 2017, this request was acknowledged by the Assistant Director of DOJ Logistics Management Facilities and Administrative Services Staff, Justice Management Division, given tracking number MRU-FOIA58-87 and referred to EOUSA.

3.8. This is the first acknowledgement the plaintiff received, and it was clearly in response to the March 3 email sent by the plaintiff, and was not from EOUSA.

3.9. On March 8, 2017, in its first correspondence with the plaintiff, EOUSA assigned tracking number EOUSA-2017-000279 to the March 3 2017 request and asked the plaintiff to address a deficiency in the request by submitting a notarized certification of identity.

3.10. On March 15, 2017, the plaintiff submitted via certified mail to EOUSA a notarized certification of identity (claim 4 will also refer to this action.).  As part of the same mailing, the plaintiff also submitted additional data points to facilitate a search for records and also a nearly identical replica of his December 19, 2016 hand delivered request sent February 1, 2017.

3.11. On March 30, 2017, EOUSA denied FOIA request #FOIA-2017-000900 from the plaintiff due to considering the information a state or local matter.

3.12. On April 5, 2017, plaintiff appealed the -000900 decision through FOIAonline. The plaintiff's appeal reasoned that records in a federal component of the United States are subject to FOIA, federal records are federal records, after all.

3.13. On April 6, 2017, the appeal was acknowledged by OIP and given tracking number DOJ-AP-2017-003392.

3.14. On April 25, 2017 OIP adjudicated -003392 and issued a full remand of the FOIA request back to EOUSA.

3.15. On May 8, 2017, the plaintiff wrote to EOUSA to inquire about when it planned to respond.

3.16. On June 5, 2017, the remand decision was acknowledged by EOUSA and given a new tracking number to organize the plaintiff's request for records: EOUSA-2017-001272. The plaintiff asks the court if the 20 day period mandated by FOIA law pertains to remands. If so, the deadline was missed.

3.17. On June 9, 2017,  a search was performed under -001272, and EOUSA stated no responsive records were found.

3.18. On June 9, 2017, the plaintiff appealed through FOIAonline. The appeal challenges the concept that fusion centers can be re-segregated into individual component ownership of records for FOIA purposes and that no responsive records existed within USALA itself.

3.19. On June 13, 2017, the appeal was acknowledged and given tracking number DOJ-AP-2017-004572.

3.20. On June 15, 2017, OIP adjudicated -004572 and affirmed EOUSA's finding of no responsive records.

3.21. To summarize the text of the plaintiff's June 9, 2017 appeal, the plaintiff makes the claim that the defendants USALA and NSD cannot escape responsibility for participating in the fusion center system, that such responsibility should be clarified as the defendants owning the records stored in such a system it helped create and can use to view records at will. Since the defendants are a federal agency, its records are subject to query and release under FOIA/PA law. Secondly, the plaintiff inquired about records generated by USALA itself and found it implausible that none existed due to the nature of the hand delivery of his original request by the plaintiff on December 19, 2016.

3.22. The plaintiff wishes to expand his argument about the fusion center system for the court. Records serve the purpose of informing the readers who view them. The plaintiff does not see how the defendants USALA/NSD, a federal agency, whose employees could view records within a sanctioned information sharing system, presumably by using required security permissions, accessed by using hardware owned by defendants USALA/NSD, could claim "not our records" and claim that the records it could consume and fully use, records which can influence

decisions and actions taken by the defendant, were somehow exempt from FOIA.

3.23. The plaintiff used the term "co-created" to describe the defendant's ownership of the fusion centers which store law enforcement records. The plaintiff contends that this term is completely accurate and should be used to assess ownership of records in the digital age.

3.24. The plaintiff also contends that there is a negative characteristic to information sharing over a shared network that is similar regardless if the network is a social network like Facebook or a fusion center which coordinates and distributes information to the law enforcement community. This characteristic is a simultaneous obscuring of the original source of the information and the events and motivations that created that information, but an amplification of the seeming validity of the information through presenting and replicating the information a potentially infinite number of times in a digital format to employees, people, whose job isn't to challenge the validity of information they view.

3.25. The plaintiff argues for the court that his experience of excessive law enforcement surveillance and operations indicates that there are not adequate controls to prevent predictable violations of the 4th and 14th Amendments of the Constitution.

3.26. These violations are predictable due to the element of "fake news" within watch lists at least partially created by an official standard of whim ("if you see something, say something") or potential bias or the frailty of human judgment.

3.27. These violations are predictable due to an apparent expansion of undercover police activity directed towards U.S. citizens unbeknownst to them.

3.28. These violations can be considered predictable when the amplification effects of shared networks, unhindered by distance or context or requirements to verify accuracy, impact those who consume the information, from law enforcement on the ground or by Department of Justice components required to perform oversight of law enforcement practices.

3.29. These violations of the requirements of the Constitution are predictable when a "watch list", viewed by a well funded law enforcement community, a community that is in present times exhorted constantly to find bad people before they offend, is hidden behind law enforcement and national security exemptions to FOIA and not subject to oversight to ensure accuracy.  Such a state of affairs can turn a "watch list" into a "target list".

3.30. Lastly, the arguments below, in claim 8, which will detail only a small portion of the psychic terror the plaintiff has experienced while being hunted by American law enforcement, is of sufficient urgency to justify a full review by the court of records on the plaintiff.  How did this happen? In America?

3.31. Therefore, the plaintiff asks the court to reverse the June 15 decision.

---------------------------------------------------------------------------------------------------------------------

Claim 4. This claim will argue for the court that the final July 3, 2017 disposition of FOIA/PA appeal DOJ-AP-2017-003648 (from FOIA/PA

request 17-091), administered by the Department of Justice Office of Information Policy (subsequently OIP) is incorrect.

4.2. Therefore the plaintiff will argue that all records covered by FOIA/PA request 17-091, querying the National Security Division of the Department of Justice (subsequently NSD), for all self specific records concerning the plaintiff, Mark Hezinger, should be released to the plaintiff.

4.3. The -003648 July 3 2017 appeal decision from OIP affirmed on modified grounds the April 20, 2017 correspondence the plaintiff received from the email address nsdfoia@usdoj.gov that there were no records responsive under FOIA to the plaintiff's original March 3, 2017 FOIA/PA request 17-091 for all records about himself. The only reason cited within the -003648 adjudication by OIP on July 3, 2017 was that there was no notarized certification of identity provided to NSD, and that safeguards written into the Privacy Act could not allow the release of non-public information to the plaintiff.

4.4 On the contrary, the facts demonstrate that the plaintiff provided a notarized certification of identity to the defendant NSD to meet the requirements of a different FOIA/PA request (EOUSA-2017-001272/appeal DOJ-AP-2017-4572, discussed in claim 3), with the only difference being the Los Angeles address of a satellite location of NSD versus its headquarters in Washington DC.

4.5. The plaintiff offers for the court below a full timeline of events and arguments to support his claim:

4.6. On March 3, 2017, plaintiff emailed the email address nsdfoia@usdoj.gov and requested to see his entire file under FOIA/PA. The email queried the US Attorney General, NSD, EOUSA, and USALA

including senior staff of the NSD satellite division housed within USALA while including (but not limiting the request to) some of the addresses where he had noticed surveillance of himself.

4.7. On March 9, 2017, plaintiff received an acknowledgement from the same email address nsdfoia@doj.gov, signed by an Arnetta Mallory, Government Information Specialist, assigning tracking number FOIA/PA 17-091 and denying the plaintiff's requests for expedited processing and a fee waiver.

4.8. On April 20, 2017, the plaintiff received an unsigned email from the same nsdfoia@usdoj.gov email address stating that the files of the Counterintelligence and Export Control Section, the Counterterrorism Section, and the Office of the Assistant Attorney General Section were searched and no records responsive to FOIA were found. The email also included language about exclusions to FOIA due to law enforcement and national security.

4.9. On April 20, 2017, later that same day, plaintiff appealed through FOIAonline. Beyond the technicalities, the basic point contained within the plaintiff's appeal is that there cannot be and has never been any justification to cite a law enforcement or national security exemption.

4.10. On April 21, 2017, the appeal of 17-091 was acknowledged and assigned tracking number DOJ-AP-2017-003648 by OIP.

4.11. On July 3, 2017, OIP decided -003648 and affirmed, on modified grounds, NSD's action on the plaintiff's 17-091 request. The only reason cited was the plaintiff had not submitted notarized proof of identity under

penalty of perjury to NSD. No national security or law enforcement exemptions to FOIA were cited or affirmed in this -003648 decision.

4.12. Plaintiff disputes the reasoning behind this decision:

-First, plaintiff submitted identifying information on his request 17-091.

-Second, a lack of certification of identity was not raised by NSD as it considered and answered 17-091 on April 20, 2017.  It was only raised by OIP in the July 3 2017 -003648 appeal decision.

-Third, to satisfy the requirements for EOUSA to process a different FOIA/PA request, namely EOUSA-2017-001272/appeal DOJ-AP-2017-004572 (see claim 3), plaintiff sent a notarized certification of identity on March 15, 2017, received March 23, 2017, to NSD and USALA (administered by EOUSA) via a mailing delivered by USPS certified mail tracking number 70163560000017348421.

4.13. The plaintiff asserts that the mailing of the notarized certification of ID that was received on March 23, 2017 to serve the requirements of the Privacy Act for the request group -001272/-004578(claim 3), which also included new correspondence from the plaintiff with new dates to support a thorough search, and a copy of the January 30 resubmission that queries USALA and NSD, was indeed sent to the National Security Division, since it has always been named in the FOIA requests and it has offices at USALA.

4.14. This mailing is now stored in the plaintiff's FOIAonline account under tracking number -001272 as a supporting file. There is a date stamp of March 27, 2017 on this submission, and the certification of identity are the last two pages of it.

4.15. The plaintiff asserts that OIP, adjudicator of appeals to NSD, had knowledge of the certification of identity submission to NSD/USALA before deciding -003648(17-091) on July 3, 2017.

4.16. OIP administered both appeals of the FOIA/PA requests discussed in this claim: the appeal of DOJ-AP-2017-003648 (from FOIA/PA 17-091)(the relevant request to the current claim of this complaint) and the appeal DOJ-AP-2017-004572 (from EOUSA-2017-001272) (discussed in claim 3).

4.17. OIP decided DOJ-AP-2017-004572 (from-001272) first, on June 15, 2017, and made no mention of a lack of certification of identity. Obviously, because one was provided.

4.18. OIP decided DOJ-AP-2017-003648 later, on July 3 2017, and cited a lack of certification of identity. OIP regularly adjudicates FOIA appeals for NSD, it cannot claim ignorance of the submitted cert. of ID.

4.19. In summary, these are the points the plaintiff makes to dispute the disposition of appeal -003648(from 17-091), a disposition that claims no notarized certification of identity was provided to defendant NSD, and to request that the court decide to have NSD (and the other parties, including the Assistant Attorney General and USALA) release records about the plaintiff:

1.   No mention of a lack of certified identity was made by NSD in its April 20 2017 correspondence which stated that there were no responsive records.

2.   17-091 listed NSD, USALA, the Attorney General, and the senior staff of the National Security Division of USALA.  b) The group of FOIA/PA

requests consolidated as EOUSA-2017-001272 queries USALA and specifically the NSD division embedded within.  The Plaintiff argues that NSD queried on the two different requests are identical, that is, there is no distinction between the NSD queried on 17-091 and the NSD division residing at the Los Angeles offices of USALA queried on the requests grouped into -001272.

3.  A notarized proof of identity was provided to NSD, named at its Los Angeles location, arriving March 23, 2017, concerning -001272, through the facts listed above.

4.  OIP knew or should of known that the plaintiff's identity was verified to satisfy the requirements of the Privacy Act. OIP administered the earlier final decision on -004572 (from -001272 and OIP remand -003392). The decision on -004572(from -001272) was made on 6/15/17 and OIP cannot be ignorant of the certification of identity provided, and therefore its decision on -003648 (concerning NSD) which happened afterwards, later, on 7/3/2017, is in error.

4.20. Therefore, the plaintiff asks the court to order the defendant NSD and any other components, including up to the Attorney General, named to release the queried records under FOIA/PA request #17-091.

---------------------------------------------------------------------------------------------------

---------------

Claim 5. FBI. The plaintiff submitted 10 FOIA/PA requests between the dates of December 20, 2016 to May 25, 2017 to defendant Federal Bureau of Investigation (FBI) via the FBI's eFOIPA website. In summary, the requests ask the FBI for all self specific records about the plaintiff, with

many of the requests including specific dates and locations to assist a search for records.

5.2. Defendant FBI responded identically 8 times to the requests (one response apparently covered 2 plaintiff requests, and another request by the plaintiff was redundant and ignored) by claiming there were no responsive records, citing FOIA exemption (b)(7)(e) and PA exemption (j)(2).  FOIA exemption (b)(7)(e) concerns the disclosure of law enforcement techniques and procedures for law enforcement investigations or prosecutions, or the disclosure of guidelines for law enforcement investigations if such disclosure could reasonably be expected to risk circumvention of the law, and PA exemption (j)(2) covers material reporting of investigative efforts pertaining to the enforcement of criminal law including efforts to prevent control or reduce crime or apprehend criminals.

5.3. Plaintiff filed the following 8 appeals to the responses by the FBI:

        DOJ-AP-2017-003107 (from request No. 1363607)

        DOJ-AP-2017-003108 (from request No. 1368513)

        DOJ-AP-2017-003780 (from request No. 1371920)

        DOJ-AP-2017-003822 (from request No. 1372007)

        DOJ-AP-2017-003824 (from request No. 1372174)

        DOJ-AP-2017-003920 (from request No. 1372203)

        DOJ-AP-2017-003921 (from request No. 1372215)

        DOJ-AP-2017-004578 (from request No. 1375595)

5.4. Plaintiff argued in all of his appeals that there cannot be any justification for the FBI to cite exemptions (b)(7)(e) and/or (j)(2).

5.5. OIP adjudicated the appeals and affirmed the decision of the FBI in all 8 appeals.

5.6. The plaintiff states for the court that he listed actual dates and events on all of his requests. Although the plaintiff could never ascertain for certain (obviously) which law enforcement component was involved, nor can he claim a 100 percent accuracy rate, if the FBI was involved to allow it to hide behind a Glomar wall is wrong. In particular, the plaintiff is very confident in appeal DOJ-AP-2017-003108(from 1368513) that he was being driven and interrogated by an FBI agent.

5.7. The plaintiff states for the court that there cannot be any justification to cite the exemptions (b)(7)(e) and/or (j)(2), and therefore the plaintiff asks the court to reverse the decisions made on all 8 appeals.

5.8. The plaintiff is particularly interested in the events that led to him being put on a watch list. The plaintiff discerned in January 2018 both that he was on a watch list and the purported reason he was on a watch list from harassing law enforcements agents in the hallway outside his own front door.

5.9. The plaintiff cannot stress enough that the underlying reason that he was put on a watch list is a vicious lie.

5.10. Of particular interest to the plaintiff are the arguments he made in DOJ-AP-2017-003107 and -003108, in which the plaintiff raised the hypotheses that a FISA court was involved. The plaintiff noticed it took much longer for the powers that be to close these two appeals in FOIAonline than the average time it took to close all of his other appeals of FBI denials to his FOIA/PA requests. The plaintiff raises the question again: was a FISA court was involved? If so, what was the justification used to authorize surveillance? Because he had an Estonian friend? Because he was involved with a politically sensitive movie script and made a website

about it (thepartlylinefilm.com)? If a FISA court was involved, whatever the justification ended up being to justify surveillance cannot be legitimate.

5.11.  The plaintiff asks the court to order the FBI to release any records it has about the plaintiff.

--------------------------------------------------------------------------------------------------------------------------------

Claim 6. Department of Homeland Security. Appeal 2017-HQAP-00272 (from 2017-NPFO-00531). This claim will argue that the appeal decision 2017-HQAP-00272 concerning the reasonableness of the search performed by DHS is wrong. A timeline of events will be followed by arguments from the plaintiff.

6.2. On June 9, 2017, plaintiff submitted his first FOIA/PA request via email to the Department of Homeland Security's (DHS) National Protection and Programs Directorate (NPPD), via nppd.foia@hq.dhs.gov.

6.3. On June 13, 2017, request was acknowledged by DHS via email to the plaintiff and given tracking number 2017-NPFO-00531, including using language "We have queried the appropriate component of DHS for responsive records".

6.4. On June 22, 23, and 24, 2017, the plaintiff submitted additional FOIA/PA requests via the FOIA form provided on the DHS website to the DHS/NPPD with additional data points to facilitate a search.

6.5. On June 27, 2017, plaintiff received an email acknowledging receipts of at least 2 of the additional submissions and consolidating them into -00531.

6.6. On July 19, 2017, plaintiff emailed a notarized certification of identity and mailed a hard copy to NPPD.

6.7. On July 21, 2017, plaintiff submitted further data points to facilitate a search under -00531, including referencing the content of the request submitted to USALA/NSD (see claim 3.)

6.8. On August 3, 2017, DHS NPPD responded to the plaintiff with a determination that it could find not responsive records to the plaintiff's -00531 group of FOIA/PA requests.

6.9. On August 5, 2017, plaintiff appealed on the grounds of both inadequacy and no law enforcement exemption could be possible..

6.10. On August 16, DHS acknowledged the appeal and assigned it tracking number 2017-HQAP-00272.

6.11. On December 29, 2017 and again on January 2, 2018, plaintiff followed up with DHS via email on the delay in deciding the appeal.

6.12. On January 3, 2018, The United States Coast Guard Office of the Chief Administrative Law Judge, citing a memorandum of agreement with the DHS General Counsel, reviewed 2017-HQAP-00272 and affirmed the August 3, 2017 determination.

6.13. The plaintiff notes that the determination did not list the correct receipt date of the plantiff's first FOIA request that was grouped into -00531, citing an inaccurate date of June 22, 2017 as opposed to the correct (and acknowledged by DHS on June 13, 2017) receipt date of June 9, 2017.

6.14. The plaintiff also notes that a specific date, November 14, 2016 was listed. The plaintiff stresses that his request for records should, while including the events on that date, not be limited to the events of that date.

6.15. On January 5, 2018, plaintiff faxed the author of the DHS affirmation with a preliminary response. The plaintiff has since realized that

he referred to a different, but absolutely true, surveillance event during the same time period, a different event than the likely event referred to by DHS.

6.16. In addition to the timeline above, the plaintiff has made significant additional efforts to query DHS through FOIA/PA concerning himself and the events listed on his requests. This effort involves FOIA requests to DHS components the Office of the Secretary and Deputy Secretary, the Office of Inspector General, the Privacy Office,  Federal Law Enforcement Training Centers, United States Secret Service, and Science and Technology, which oversees the RAND Homeland Security Operational Analysis Center.

6.17. The plaintiff will elaborate and give a timeline on the FOIA/PA request 2017-STFO-00082 sent to the DHS component Science & Technology (S&T).

6.18. On July 16, 2017, the plaintiff used https://www.dhs.gov/dhs-foia-privacy-act-request-submission-form, an authorized FOIA submission process for all of DHS, to submit a FOIA/PA request to S&T concerning records about himself. It's concerned with threat assessment tools and with behavior from RAND employees the plaintiff observed using undercover surveillance signals while he was a member of the Angel City Chorale.

6.19. On July 19, 2017, DHS S&T acknowledged the request and required a certification of identity.

6.20. On July 19, 2017, in the late evening, plaintiff emailed scans of the identity requirements and mailed the hard copies the next day, July 20, 2017.

6.21. On October 9, 2017, the plaintiff emailed a follow up to inquire as to the status of the request.

6.22. On October 20, 2017, the plaintiff talked on the phone twice with a FOIA Privacy Office employee responsible for S&T requests. The first call was made by the plaintiff. In it, the FOIA officer stated that the plaintiff's certification of ID had never been received. The plaintiff disputed this, and the staff member panicked a bit on the phone. A few hours later, the officer called back and said that the ID had been magically received that same day, October 20, 2017.  The plaintiff wishes he had challenged the officer on this assertion, for, of course, the hard copy of the ID was never lost, it was conveniently disregarded. See attached exhibit 3 for call logs of the two calls.

6.23. On October 23, 2017, DHS S&T formally replied back to the plaintiff's request stating the plaintiff had not provided a sufficient description of the records sought.

6.24. Back to the main timeline: the plaintiff gave two arguments in his formal appeal 2017-HQAP-00272(from 2017-NPFO-00531): First, he's never, ever, ever been a threat of any kind, and therefore no law enforcement exemption to FOIA could be cited; second, the plaintiff contends, based on his significant and wide ranging efforts to query DHS about records and DHS's own language in its acknowledgement letter that it was querying the appropriate component, that DHS's search was inadequate.

6.25. Plaintiff further argues that DHS's search was inadequate due to all of the plaintiff's numerous FOIA/PA requests to many DHS components being overseen by one centralized FOIA department, namely the Privacy Office, which was itself queried with a FOIA/PA request regarding personal records about the plaintiff.

6.26. Plaintiff also argues that the DHS Privacy Office is a well functioning organization within DHS that knows how to search for records from any DHS component and has access to the technology and human contacts that allows it to search data across DHS easily. Therefore the basic statement that DHS makes that it "does not maintain a central database on individuals" is out of date. In fact, for FOIA purposes, DHS does in fact practice an organized and centralized method of effectively querying all of its records in all of its components.

6.27. The plaintiff points out that one of those FOIA requests, querying the Office of the Secretary, also served the purpose of alerting the Office of the Secretary itself. The plaintiff argues that national security records have been integrated so well across components, due to years of effort devoted to the task, that a search is probably as easy as typing a name on a keyboard into one program for the Office of the Secretary.

6.28. Plaintiff disputes the defendant classifying the vast quantity of data points provided as "speculation absent well founded allegations". For example, the plaintiff has endured so much surveillance that he has learned the undercover signal language that law enforcement uses when targeting an individual. The plaintiff managed to photograph the leader of a surveillance operation against himself while he was a member of the Angel City Chorale in December of 2016, and he sent along the photograph to defendant DHS.  Plaintiff anticipates that records the plaintiff has queried from defendants USALA and NSD in other claims within this lawsuit should also refute the speculation characterization from defendant DHS.

6.29. Plaintiff argues that the importance of determining whether the defendant DHS is out of compliance with the 4th and 14th Amendments of

the Constitution and committing a civil rights violation makes a thorough search by DHS across components for records reasonable.

6.30. Plaintiff also asks for the release of the memo that gave authority to the Coast Guard to be the United States component that decided his appeal. Why was that done? Is the Coast Guard involved in any other way?

6.31. Plaintiff notes that the Coast Guard cannot be impartial if it is a component of DHS.

6.32. While acknowledging that exasperation is not a great reason to abandon continuing the FOIA process with S&T, the plaintiff asks the court to either determine that the choice to ignore his request for months was deliberate and incorrect in the face of the plaintiff providing a certification of identity and order a search for records, or review his request and decide for itself if the request was not specific enough in the context of this entire complaint.

6.33. Therefore the plaintiff argues that there is enough justification to require a robust search, and a ruling from the court as to the definition of a 'robust search', for records concerning the plaintiff of all Department of Homeland Security components that would create records connected with law enforcement or national security, regardless of how many that might be. And for the release of records found under such a search.

6.34. Plaintiff invites the court to take the opportunity to update the "reasonableness" standard in DHS' FOIA practices in the direction of greater transparency, especially in light of the need to reinforce the constitutional standards for privacy. The plaintiff thinks such an update should reflect the great technological progress made in data search.

--------------------------------------------------------------------------------------------

-----------------

Claim 7. Los Angeles Police Department.

7.2. On April 11, 2017, plaintiff sent a letter to the Los Angeles Chief of Police via certified mail, which arrived April 13.

7.3. Also on April 11, 2017, the same letter was sent to both the Los Angeles County Civil Grand Jury and the Los Angeles County District Attorney.

7.4. The letter asks the LAPD to respond to the plaintiff under the California Public Records Act.

7.5. LAPD never responded to the plaintiff.

7.6. The plaintiff asks that the court require LAPD to at least acknowledge the plaintiff's letter.

7.7. The plaintiff is well aware of the law enforcement exemption to the California Public Records Act. The plaintiff states definitively that there is no basis for any law enforcement investigation or the extensive surveillance that the plaintiff has suffered.

7.8. Plaintiff asks the court to order LAPD to disclose records about the plaintiff, based on both the lack of response to the letter and/or other evidence of LAPD involvement in surveilling the plaintiff gleaned from records released by other defendants of this lawsuit.

--------------------------------------------------------------------------------------------

--------------

Section 8. Argument for immediacy.  Plaintiff will now show good cause for court to provide expedited relief by recounting the events of both January 8, 2018 and January 11, 2018 that occured at the Federal District

Courthouse on 312 N Spring St, Los Angeles, CA 90012, as he believes these events will add additional context. These events will be narrated in first person:

8.2.

I, Mark Hezinger, went to the courthouse on January 8, 2018 to begin to learn how to file a FOIA lawsuit pro se. I arrived at the security station and underwent the normal security precautions, including chit chat, removing my shoes, having my bag x-rayed, being searched, and walking through the metal detector.

I brought with me my normal shoulder bag that resembles a briefcase. In it I had mistakenly brought something to court I never should have brought, a small screwdriver combo with 2 ends that have caps on them.

I use the phillips screwdriver end to change the blades on my small pencil sharpener, but in retrospect, post 9/11/2001, I could imagine how the marshals would consider this implement dangerous.  The implement is colored black and at first glance could resemble a pen. A photo of this implement and evidence of its utility to me is attached as exhibit 8,1.

As I picked up my bag after the x-ray security search, to my surprise the marshals crowded around me expectantly to a distance of about a foot. It turns out there was a reason for their behavior, but I was not yet aware of this reason.

I inefficiently made my way to the clerk station to pick up a packet on how to file. Entering a hallway, there were suddenly two beeps and I soon walked by a person standing in the hallway that leads to the clerk station

who appeared to me to be someone who knew who I was and was, for lack of a better word, leering at me.

During this time at the clerk station I endured a surveillance operation. I know this because I've spent the last two years enduring many surveillance operations, and I've learned the undercover signal language that law enforcement uses, which in its basic form is international. For example, the signal to indicate that an officer has a target in view is rubbing your head or playing with your hair, tipping the brim of your cap, or other similar slight variations. An alternate can be touching the neck. I've seen this signal, with myself as the target being referred to, literally hundreds if not thousands of times.

After a delay where the folks performing the op wanted to see what I would do, I eventually was invited to the counter and received a packet and had it explained to me in a quite satisfactory way.

Since it was Monday, I then made my way to the pro se clinic. I was asked to fill out a simple intake form, and there's a small room with chairs and tables to write on for that purpose.

It was there I discovered that I had brought the screwdriver, and was shocked, and threw it back into the bag. But I want to point out that such an implement normally would never be allowed into court, and I conclude that in my case the screwdriver was DELIBERATELY LEFT IN THE BAG in the hopes of catching me performing some act of violence with it.

All of these facts can be confirmed by the marshals manning the security stations at the courthouse on those days.

The following Thursday, January 11, 2018, I went back to court for 2 reasons, first, to apologize and explain for the error (I regularly journal, use

a pencil to write with, like sharp pencil tips, and I had thrown this implement along with my pencil sharpener into my bag for a cross country driving trip I made to my parents in Chicago for Thanksgiving) and second, to hopefully be able to show evidence to the marshals that I have filmed on my smart phone of my twitter account being blocked. I have literally, by filming my computer screen with my smartphone, produced evidence that I was blocked from tweeting. I struggle to find law enforcement who have an objective view of me, and I hoped the marshals might be open to being a witness to my current predicament.

During this visit on January 11 to the court, my only purpose was to talk to the marshals. The marshals were incredibly suspicious. I suspect they were warned in advance about my arrival.

There are many, many more stories with lots of color and excitement that I could recount. I have been enduring a vast attempt to destroy my life, which spans multiple law enforcement agencies. The goal of this complaint is, first and foremost, to be believed. I've made the mistake of sharing this to friends and watched them become ex friends, to the point where I dare not share this with anyone.  I can share with the court that the burden of knowing you are hunted and cannot get help, including from my own congressman, is a large one.

I have other goals. I want proper financial redress for the suffering I've endured. To have law enforcement's justification of its behavior towards myself identified, reviewed, and repudiated. I want the financial penalty to be culturally relevant and large enough to guarantee structural reform within law enforcement and much, much greater oversight over undercover police activity.

I also challenge the judicial branch of government to affect change in law enforcement practices.

In my case, I suspect the term "watch list" should be more accurately labelled as a "target list". I think the characteristic of all internets or intranets, or, in this case, US law enforcement fusion centers, to present mistaken or biased information as objective truth, simply by having it appear on a computer screen, is far too dangerous a temptation and enticement for law enforcement (who are, after all, fallible humans, as are we all) to ignore the constitutional protections and do actions that the constitution prohibits under the 4th and 14th Amendments.

8.3. Plaintiff chose to recount these two events for the court, events which occured at the courthouse itself, because plaintiff believes they are symbolic of his many experiences of an overzealousness, which, in these recounted instances, have attempted to encroach upon his very ability to seek redress under the law and the constitution. Plaintiff asserts that there are records which detail over these past 2+ years many direct, immediate threats to his reputation and freedom.

8.4. The surveillance got to the point in January 2018 that the plaintiff learned why he was put on a watch list, because it was thrown in his face by law enforcement personnel <u>outside his own front door</u>. Apparently in July 2011, the plaintiff's former employer lied to police and told them he had sexually harassed another employee.

8.5. This is egregiously false.

8.6. Additional content exists which will bolster the argument for expedited relief at at <u>www.hezingerprojects.com</u> and <u>www.markhezinger.com</u> and the plaintiff's twitter account, @integralmark.

8.7. The plaintiff attests for the court that he heard this phrase again and again in January of 2018 from surveilleurs: "we're worried about your mental health". At least once this line was delivered by a woman who had a sonic weapon in her backpack and used it against me. The plaintiff asks the court to consider the untenable danger to the constitution in allowing secret police to pretend to be mental health professionals[1].

8.8. On occasion the plaintiff cited a link to his blog in various FOIA requests to defendants. The blog was originally at markhezinger.com. Several months afterwards, the plaintiff first took down his blog (after losing a chance at a job when the employer performed a web search) and then put it up again in 2018 but changed the URL to hezingerprojects.com.

8.9. Surveillance and threats to my freedom are ongoing. Plaintiff has video evidence from Memorial Day weekend 2018. He called in and described the events to the FBI.

------------------------------------------------------------------------

------------------

Additional points and conclusion.

9.2 The plaintiff is particularly interested in a full accounting of his identity being officially added to a watchlist (if this happened) based on the events which occurred during his final days of employment at Internet Brands/CarsDirect.com, headquartered in El Segundo, CA,  in mid July to August 1 of 2011. The plaintiff learned about the watch list through constant contact with surveillance officers attempting to intimidate him in January 2018 in the immediate surroundings of his residence. If the inferences that surveillance officers made are true, that the plaintiff was added to a watch

[1] https://en.wikipedia.org/wiki/Rosenhan_experiment

list during this time, then the plaintiff was defamed. Internet Brands made a false allegation of sexual harassment. El Segundo police made a terrible choice and added the plaintiff to a watch list.

9.3. Throughout his ordeal, the plaintiff has been asking "why??" If threat or mental health assessment profiling is a part of the reason, the plaintiff argues that these assessment profiling practices are unproven and incredibly dangerous and the events he has suffered is evidence of a new type of threat to civil liberties in the United States of America, the threat of an advanced secret police culture misusing dubious target lists (misnamed watch lists) with dubious justifications, all the while completely unsupervised by the constitution, thus damaging the quality of life for citizens of the United States. It is not an over exaggeration to equate such behavior as similar to typical behavior by authoritarian regimes around the world[2]. It is to the benefit of the country to have any profiles enacted on the plaintiff without his knowledge released in order to facilitate a reassessment of the efficacy of such profiling.

9.4. It is a spectacular double bind to attempt to share one's experiences with one's friends and have the improbability of them cause them to doubt your sanity, when in fact the plaintiff suspects and seeks to demonstrate that law enforcement somehow, due to some unknown decision, is hunting you due to a mental health smear.

9.5. The plaintiff wrote letters to the City of Los Angeles and its mayor, to the Los Angeles County District Attorney, and the Civil Grand Jury of Los Angeles County. The plaintiff was forced to investigate options for political asylum in January 2018, and applied for German citizenship. The plaintiff

---

[2] http://www.wired.co.uk/article/chinese-government-social-credit-score-privacy-invasion

asks the court to consider all the different ways the plaintiff attempted to address what was happening to him and take them into account when it considers awarding damages to the plaintiff.

WHEREFORE,

9.6. Plaintiff asks the court to grant the plaintiff's requests to order defendants to release documents.

9.7. Plaintiff asks the court to waive all fees that are normally permitted to be charged while fulfilling FOIA/PA requests due to a failure of all defendants to meet response deadlines. See *Bensman v. Nat'l Park Serv.*, 806 F.Supp.2d 31, 42-43 (D.D.C. 2011).

9.8. Plaintiff asks for costs and reasonable legal fees of 90 thousand dollars in this action, as provided in 5 U.S.C. § 552(a)(4)(E).

9.9. Plaintiff asks for 400 million dollars in damages for the violations to his privacy and the resulting threats to his liberty in the spreading of a terrible defamation of his character throughout law enforcement and his neighborhood, the communities in which he lives, shops and interacts with others, the destruction of access to all avenues the plaintiff used to nurture community in his life, and asks to delegate to the court to determine the amount each component of the government should pay.  In other words, 400 million dollars is the size of the pie, and the court decides how big a slice each component eats.

9.10. Plaintiff asks the court to grant other and further relief as may deem just and proper.

9.11. To give possible examples of the proper relief the court might grant, the plaintiff respectfully suggests that if any claim within this complaint fails to pass muster with the court, the plaintiff asks that the court

violation of privacy protections and order any relevant federal, state or local components to release records concerning the plaintiff in the interest of justice.

9.12. Such relief might look like an order to have all defendants and other relevant as yet unnamed components check their records for every data point listed by the defendant in any FOIA/PA request, regardless of which component was originally queried with the data point.  Or to have USALA and/or DOJ get off its butt and go to work and provide a complete accounting of what happened with the proper people doing it, in service not of the plaintiff, but of the constitution. Another example is to specifically examine DHS and demand reform, especially when the phrase "we have queried the appropriate component" has proven to not be trustable.

9.13. Ultimately, the plaintiff challenges the court to use his case to substantially challenge and change law enforcement practices for the better. Watch list reform, for example.  Transparency requirements for law enforcement with teeth on how they use undercover police, and what methods they can use.

9.14. The plaintiff asks the court to award free security by law enforcement during the making of the movie The Party Line sometime in the future.

9.15. The plaintiff states for the court that he thinks that there are effectively no protections against entrapment in America.

9.16. Without knowing for certain at the time of this filing whether they were used in his case, predictive crime algorithms are a bunch of crap, abusive crap that renders privacy protections built into the constitution, protections that were heretofore carefully and thoroughly protected by the

judiciary, into meaningless platitudes. If they were used, the court should take the opportunity to rule them unconstitutional and honor the basic privacy guarantees and tradition of presumption of innocence that most of us, American citizens, unconsciously trust is still true.

9.17 Plaintiff asks for the court to order to an immediate halt any surveillance tactics being practiced against the plaintiff.

It would be a severe tragedy if secret police abuse turned America into something closer to Cuba. The plaintiff observes that the solution to law enforcement's trust problem with the country at large is probably not to go undercover to avoid transparency.

Respectfully submitted,

Mark Hezinger

(address redacted)

# Exhibit List

1. Original FOIA complaint   pg 36-38
2. phone records. (claim 6)      39
3. Immediacy exhibit (section 8)   40-42

1 of 3
US Attorney

12/19/2016

To:

The United States Attorney's Office

Central District of California

Attn: National Security Division, Patrick Fitzgerald and Chris Grigg

312 North Spring Street, 15th floor

Los Angeles, California 90012

Hello,

My name is Mark Hezinger.

I am officially filing a request under the FOIA/Privacy Act 5 U.S.C. 552 to see any files you have created and updated about myself, Mark Hezinger.

I want to see everything you have on me. It's my file, please let me see it.

The above text should be enough, but adhering to the form of FOIA requests, I will list some potential addresses and dates that might appear in any files about me. The following hints from me do not mean I am limiting my request in any way. To repeat for emphasis, I want to see everything.

In events starting around late January or early February 2016 and ongoing to present day I have endured many occurrences of government surveillance. I think these events risked both my life and the protections I am afforded as a citizen of the U.S.A., such as my liberty, my ability to think for myself, and more.

Below are some locations:

The Albertsons grocery store on Hillhurst, 90027. The address is 2035 Hillhurst Ave, Los Angeles CA 90027.
There's obviously videotape that has captured what has happened, there are many employees of the store that know of the situation, now I want to see what you have documented about it. I've also left a letter with the manager of the store asking for $30 million in damages.

Other grocery stores include Trader Joe's 2738 Hyperion Ave, Los Angeles, CA 90027 and the Vons 4520 Sunset Blvd, Los Angeles, CA 90028.

Any documentation about events or surveillance that occurred within the context of the regular rehearsals or performances of the Los Angeles choir named Angel City Chorale, which I perform in.
Rehearsals were held at 11555 National Blvd, Los Angeles, CA 90064. The spring 2016 concert dates June 4th and 5th, 2016, and winter 2016 concert dates December 3rd and 4th, 2016 were held at 4350 Wilshire Blvd, Los Angeles, CA 90005. There was also a day long event called the

36

2 of 3
US Attorney

"Tour of Hope" the following Saturday, December 10th at various locations in and around Los Angeles.

I think it's prudent to state I have a 12/4/2016 photo of a leader of the surveillance team at the concert venue, I've attached it to the end of this letter. There is also photographic evidence of others.

Any events of surveillance at my own address: 4319 Price St, LA, CA 90027 both #4, my own apartment, and, as a guess, any neighboring apartments within the building or in my immediate neighborhood.

Any events in my neighborhood as I walked or ran.

Any documentation of cyber spying in any form targeting my home computer, smartphone and my communications with others both domestically and internationally. This can include hardware such as my computer itself, wifi devices, modems, etc.; software interventions such as exploiting zero day vulnerabilities to Mac OS or any other software or app; and all possible forms of my communication with others such as voice, email, Skype, Facetime, etc.

Any documentation about events or surveillance in 2016 at any of the pot dispensaries I buy very small amounts of pot from. I have the addresses if you need them.

Any documentation about events that occurred at and near the Burbank offices of US Representative Adam Schiff, 245 E. Olive Avenue, #200, Burbank, 91502 November of 2016.

More addresses:
200 Lincoln Blvd, Venice, CA 90291
11300 Hartland St, North Hollywood, CA 91605
10914 S La Cienega Blvd near LAX, CA 90304
6628 Lankershim Blvd, North Hollywood, CA 91606
And one more private address in Glendale less than 5 miles away from me that fits the theme.

March 4,5,6 2016 wedding in San Diego, at the hostel 3790 Udall St.,San Diego, CA 92107, wedding site 2303 Shelter Island Dr San Diego CA 92106, and also the drive back to Los Angeles.
LACMA a couple days later early March 2016. Griffith Park golf March 10, 2016

Are there file entries from earlier years before 2016? If so, I want to see them.

Please also include the results of any evaluations of me, for example (but not limited to) psychological evaluations, second opinions, profile scoring using CVE (Countering Violent Extremism) protocols.

25 bucks max for fees is fine. I believe electronic transmission of documents is much less expensive. Please use my home email address, integralmark@gmail.com to send the file to me if this is the cheapest way to fulfill my request under the law I cited above. You should also use my email address for any other communications with me.

37

3 of 3
US Attorney

I want a full accounting of this fiasco.

Sincerely,

Mark Hezinger

**Identifying Information**
Full Name: Mark Herman Hezinger
Aliases, or Previous Names: none
Date of Birth: 08/01/1967
Place of Birth: Port Jefferson, NY
Citizenship: USA

(redacted)

www.markhezinger.com

Below is a photo of a suspected government operative, dressed in black, 12/4/16, Wilshire United Methodist Church, Los Angeles



38

6 17

| Statement for | Account number | Bill close date |
|---|---|---|
| MARK H. HEZINGER | | Nov 10, 2017 |

## Usage details

*redacted*

### Talk

The date and time corresponds to the local time where the mobile was located.

| Date and time | Number | Description | Type | Min | Amount |
|---|---|---|---|---|---|
| 10/18/17, 12:07 PM | (912) 261-4512 | to BRUNSWICK/GA | - | 7 | - |
| 10/18/17, 12:29 PM | (202) 254-5700 | to WASHINGTON/DC | - | 2 | - |
| 10/18/17, 3:44 PM | (310) 383-6469 | to SNMN MRVS/CA | - | 2 | - |
| 10/18/17, 4:34 PM | (323) 912-1125 | to LOSANGELES/CA | - | 5 | - |
| 10/20/17, 6:22 AM | (202) 254-5700 | to WASHINGTON/DC | - | 3 | - |
| 10/20/17, 11:29 AM | (202) 254-8999 | incoming | - | 8 | - |
| 10/20/17, 11:53 AM | (323) 912-1125 | to LOSANGELES/CA | - | 2 | - |
| 10/20/17, 11:56 AM | (747) 283-8419 | Incoming | (F) | 2 | - |
| 10/20/17, 12:07 PM | (747) 283-8419 | to BRBN BRBN/CA | (F) | 2 | - |
| 10/25/17, 4:59 PM | (818) 450-2900 | to BRBN BRBN/CA | - | 3 | - |
| 10/26/17, 3:07 PM | (818) 450-2900 | to BRBN BRBN/CA | - | 4 | - |
| 10/30/17, 5:51 PM | (213) 550-9699 | to LOSANGELES/CA | (F) | 3 | - |
| 10/30/17, 5:57 PM | 8004004222 | 1-800 # | - | 5 | - |
| 10/30/17, 6:03 PM | (630) 857-9002 | to NAPERVILLE/IL | - | 12 | - |
| 10/31/17, 12:41 PM | (714) 602-4853 | incoming | - | 1 | - |
| 10/31/17, 1:08 PM | 8004004222 | 1-800 # | - | 4 | - |
| 11/06/17, 1:30 PM | (323) 687-0133 | to LOSANGELES/CA | - | 2 | - |
| 11/09/17, 6:25 PM | (630) 857-9002 | Incoming | - | 8 | - |
| 11/10/17, 7:33 PM | (630) 857-9002 | to NAPERVILLE/IL | - | 10 | - |
| | | | **Total:** | **85** | **$0.00** |

### Text

The date and time corresponds to Pacific Time (PST/PDT).

| Date and time | Number | Destination | Direction | Type | Amount |
|---|---|---|---|---|---|
| 10/13/17, 1:10 PM | 83 7401 | Directtoconsumer Shortcode | Incoming | Text | |
| 10/14/17, 7:31 AM | (213) 297-2575 | Losangeles, CA | Incoming | Text | |
| 10/14/17, 7:31 AM | (213) 297-2575 | Losangeles, CA | Incoming | Text | |
| 10/14/17, 7:31 AM | (213) 297-2575 | Losangeles, CA | Incoming | Text | |
| 10/26/17, 6:40 PM | (818) 363-0438 | Snfn Grhl, CA | Outgoing | Text | |
| 10/30/17, 6:02 PM | 22 2669 | Directtoconsumer Shortcode | Incoming | Text | - |
| 10/30/17, 6:07 PM | 22 2669 | Directtoconsumer Shortcode | Incoming | Text | - |
| 10/31/17, 1:11 PM | 22 2669 | Directtoconsumer Shortcode | Incoming | Text | |
| 10/31/17, 1:15 PM | 22 2669 | Directtoconsumer Shortcode | Incoming | Text | |
| 10/31/17, 1:15 PM | 22 2669 | Directtoconsumer Shortcode | Incoming | Text | |
| 11/02/17, 1:48 PM | (408) 214-6503 | San Martin, CA | Incoming | Text | |
| 11/06/17, 2:50 PM | (310) 428-5406 | Snmn Snmn, CA | Outgoing | Text | - |
| 11/06/17, 2:52 PM | (310) 428-5406 | Snmn Snmn, CA | Outgoing | Text | - |
| 11/06/17, 3:43 PM | (310) 428-5406 | Snmn Snmn, CA | Incoming | Text | |
| 11/06/17, 3:43 PM | (310) 428-5406 | Snmn Snmn, CA | Incoming | Text | - |
| 11/06/17, 3:58 PM | (310) 428-5406 | Snmn Snmn, CA | Outgoing | Text | |
| 11/06/17, 4:22 PM | (310) 428-5406 | Snmn Snmn, CA | Incoming | Text | - |
| 11/09/17, 7:19 AM | 3 9858 | Directtoconsumer Shortcode | Incoming | Text | |
| | | | | **Total:** | **$0.00** |

### Data

The date and time corresponds to Pacific Time (PST/PDT).

| Date and time | Origin | Service | Type | MB | Amount |
|---|---|---|---|---|---|
| 10/11/17, 10:59 AM | - | Mobile Internet | - | 0.7978 | - |
| 10/11/17, 12:59 PM | - | Mobile Internet | - | 0.0751 | - |
| 10/11/17, 2:59 PM | - | Mobile Internet | - | 0.0087 | - |
| 10/11/17, 4:59 PM | - | Mobile Internet | - | 0.0166 | - |
| 10/11/17, 6:59 PM | - | Mobile Internet | - | 0.0869 | |

**Type:** (A) Call Waiting (B) Call Forward (C) Conference Call (D) Duplicate (E) Data/Fax (F) Mobile2Mobile (G) Voicemail (H) Free Calls (I) Intl Disc Call (J) Intl Disc Call to Mobile (K) WPS Call (M) AnyMobile (R) Roaming (T) T-Mobile Number (V) myFaves Call (W) Wi-Fi Call (X) T-Mobile @Home Call (Y) Subscription (Z) One-time Purchase

39

Exhibit



40



41



42